### UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| CARL V. MARSHALL, | ) | |
| AIS#110574 | ) | |
| | ) | |
|     Plaintiff, | ) | |
|     vs. | ) | **CIVIL ACTION NO.** |
| | ) | **206-CV-1131-MHT** |
| | ) | |
| RICHARD ALLEN, et al. ., | ) | |
| | ) | |
|     Defendants. | ) | |

## ANSWER
## And
## SPECIAL REPORT

Defendants file this their Answer and Special Report as directed by the Court.

## EVIDENTIARY SUBMISSIONS
## IN SUPPORT OF RESPONDENT'S MOTION

1. Affidavit of Lt. Richard Naile

2. Affidavit of Capt. Joseph Womble

3. Affidavit of Lt. Edwin Lane

4. Affidavit of Officer Jerry Odom

5. Affidavit of Warden Charles Hadley

6. Disciplinary Report for November 29, 2006, Possession of Contraband

7. SOP 09-05, "Emergency Fire Procedure" and fire evacuation plan

8. AR-412, "Institutional Law Libraries"

1

9. AR-448, "Inmate Mail"

10. October 19, 2006 email from Deputy Commissioner Lovelace re: Christmas package rules

11. December 13, 2006 email from Joseph Womble re: inmates who do not meet package criteria

12. Health Department Food Inspection Report dated April 10, 2006, 96 Score

13. Health Department Detention Facility Inspection Report dated April 10, 2006, reflecting the Red Eagle facility population to be under its rated capacity.

## PETITIONER'S ALLEGATIONS

The Petitioner, an inmate in the Alabama Department of Corrections, currently incarcerated at Red Eagle Farm in Montgomery County, Alabama, alleges:

1. Defendants confiscated a Christmas package in retaliation for his legal activities;

2. Defendants denied him access to the courts due to racial discrimination; and,

3. Defendants subjected him to unconstitutional conditions of confinement.

## INVESTIGATIVE RESULTS

Petitioner (hereinafter referred as "Marshall"), makes wildly rambling, broad brush allegations as set out above, apparently attempting to make varying degrees of 8th amendment claims, plus, an outright completely unsubstantiated claim of "theft" of his unauthorized "Christmas package". Unfortunately for him, though, the facts, as revealed below, clearly show that there is simply no factual basis to any of his frivolous and baseless claims.

2

### *Confiscated Christmas Package.*

The Department of Corrections has a long standing practice of making special Christmas packages available to inmates, who are in "good standing", and have not had any disciplinary actions, formal or informal, during the months of November and December. (Exhibit 9, AR-448,V.I.4.b., "Inmate Mail").

That policy is well known among the inmates, and is distributed to them well in advance via the inmate bulletin board and notification system. .

Marshall was convicted of a violation of Rule #64, "Possession of Contraband" on December 5, 2006, for an incident that occurred on November 29, 2006. (Exhibit #6). Therefore, when Marshall's package arrived, he was not permitted to receive it.

Respondents have no control over the package vendor, who is responsible for refunding Marshall his money. Respondents have certainly placed no obstacles in Marshall's way to hinder him receiving any refund he may be entitled to from them.

### *Denied Access To Courts*

Marshall's second unsupported claim is his baseless allegations of denial of access to the courts and\or the law library. Except for his self serving and conclusory claims, he offers no support whatsoever for such a claim.

The law library has never been shut down and unavailable to inmates. It is fully supplied, and available, subject to certain hour and use limitations. The printer has never been removed. On one occasion, because of abuse and misuse by some inmates, the printer cartridge was briefly removed, pending a decision as to what to do in order to protect the equipment from abuse by a small minority of inmates.

As for "retaliation", none of the respondents was even aware of Marshall's "litigious

3

bent", so therefore, they could not possibly be guilty of retaliating against Marshall for his "legal activities" and\or "race". (Exhibits 1,2,4,5 & 8).

<u>*Unconstitutional Conditions of Confinement*</u>

Third and last, Marshall, with no offering of anything to substantiate them, wildly claims that Respondents have violated his rights by subjecting him to unconstitutional conditions of confinement. He apparently is attempting to assert that conditions are a fire hazard and that it is unsanitary.

Respondents simply say that nothing could be further from the truth. Respondents submit for the Court's review, Exhibits 7, 12 and 13. Exhibit 7 is a copy of SOP 09-05, "Emergency Fire Procedures", which reflects a detailed and adequate fire escape plane for the entire facility.

Exhibit 12 is a copy of the Health Department Food Inspection Report dated April 10, 2007, reflecting health rating of 96 !!!! Exhibit 13 is a copy of the Health Department Detention Facility Inspection Report dated April 10, 2006, which reflects the fact that the Red Eagle facility is rated to house a capacity of 308 inmates, but the actual population is only 267.

## **ANSWER**

The Defendants assert the following defenses to the Plaintiff's claims:

1. The Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

2. The Plaintiff's Complaint fails to state a claim upon which relief can be granted.

3. The Defendants cannot be held liable on the basis of *respondeat superior*, agency, or vicarious liability theories.

4. The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

4

5. The allegations contained in the Plaintiff's Complaint against the Defendants, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. *See Oladeinde v. City of Birmingham,* 963 F. 2d 1481, 1485 (11th Cir. 1992); *Arnold v. Board of Education Of Escambia County,* 880 F. 2d 305, 309 (11th Cir. 1989).

6. The Defendants plead all applicable immunities, including but not limited to sovereign, qualified, absolute, discretionary function, state agent, and statutory law enforcement officer immunity.

7. All claims of the Plaintiff against these Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution.

8. The Defendants plead the affirmative defense of contributory negligence and assumption of the risk.

9. The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e (a) and as such these claims should be dismissed.

10. The Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against any of them and that any such award would violate the United States Constitution.

11. The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

Pursuant to 28 U.S.C. § 1915 A, this court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants

who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e) (c).

## ARGUMENT

Based on the above substantiated submissions of Respondents, there simply is no factual basis to any of Marshall's absurd claims. Marshall offers nothing but wildly speculative and unsubstantiated assertions. The burden is on the petitioner to come forward with more than mere speculation and accusatory innuendo. Marshall has completely failed to meet his burden, and Respondents are entitled to a dismissal of all of Marshall's claims, and for costs and other appropriate sanctions to be assessed against Marshall for his completely frivolous and factually and legally baseless petition. Marshall makes no substantiated claim of any action or inaction by any of the respondents, which rises to the level of a constitutional violation.   Respondents should be able to close now and submit the case. But the following "re-visit" to 8th Amendment and Immunity guidelines are submitted for the review of the court.

When "evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment.  Although this deference 'does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987), quoting *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).

"To establish a viable eighth amendment claim, the evidence must show that the measure taken inflicted unnecessary and wanton pain and suffering or was totally without penological justification." *Ort* at 322. Other citations omitted.

Marshall has failed to demonstrate any set of facts which rise to the level of a constitutional deprivation.

6

As for institution "conditions", in order to succeed on a claim that prison [working conditions] violated the Plaintiff's Eighth Amendment rights, Plaintiff must first prove that conditions were, objectively, sufficiently serious, and that the Defendant acted with sufficiently culpable state of mind so as to constitute deliberate indifference to Plaintiff's health or safety by acting or failing to act despite knowledge of such substantial risk of serious harm. *Stephens v. Johnson* 83 F3d. 198 (8th Cir.1995).

With Health Inspections of 96 and a population of less than the rated capacity, Marshall simply has no legs to stand on.

### *Respondeat Superior*

Marshall's complaint itself recognizes that the duties of these defendants were those of a supervisory nature, only. If at all, this claim is based upon the theory of *respondeat superior*, which is unavailable under Section 1983. *Farrow v. West* 320 F3d. 1235 (11thCir.2003).

Marshall does not, with any specificity whatsoever, allege any actions or inaction on the part of these Defendants which would subject them to liability under 42 U.S.C. Section 1983.

### IMMUNITY

Plaintiff's federal claims (as well as all state pendente claims) under 42 U.S.C., Section 1983 against these defendants in their official capacity, are barred by the 11th Amendment to the United States Constitution.   Therefore, the plaintiff's claims against these defendants under Section 1983 are due to be dismissed as a matter of law for lack of subject matter jurisdiction.  The 11th Amendment to the U.S. Constitution bars the federal court from exercising jurisdiction over states. Ex Parte Young, 209 U.S. 123.

Claims against the State of Alabama and its agencies, officers and agents,  under Section

1983, are barred by the 11th Amendment to the United States Constitution.  Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989); see also Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992).

The 11th Amendment to the Constitution of the United States of America bars any claims, including any and all pendente state law claims, against a state or its officials in the absence of the consent of the state.  See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 99-100 (1984) (wherein the Supreme Court of the United States held that the 11th Amendment barred any and all state law claims brought in U.S. District Court under pendente jurisdiction, as well as under Section 1983.)  Marshall has failed to allege, and he offers no evidence whatsoever that there has been a waiver of the State of Alabama's 11th Amendment immunity in this case. Therefore, his claims against these defendants in their official capacity, are all barred for lack of subject matter jurisdiction.

The State of Alabama and all of its services must operate through its agencies, officers and employees. The courts are firm in their holdings that state agencies, officers and employees are absolutely immune from tort liability.  Rutledge v. Baldwin Co. Commission, 495 So.2d 49 (Ala. 1986).

The State of Alabama, its agencies, officers and employees, in their official capacities and individually, are absolutely immune from suit.  These defendants, as officers, employees and agents of the Alabama Department of Corrections, are entitled to invoke sovereign immunity from suit even though there may be some individual officials named as nominal defendants in the suit. See Destafney v. University of Alabama, 413 So.2d 391 (Ala. 1981).

Respectfully submitted,

8

/s/ Neal P. Conner
NEAL P. CONNER (CONN2024)
ASSISTANT GENERAL COUNSEL

**ADDRESS OF COUNSEL:**

Alabama Department of Corrections
Legal Division
Post Office Box 301501
301 South Ripley Street
Montgomery, AL  36130-1501
(334)353-3889

## CERTIFICATE OF SERVICE

I do hereby certify that on the 27th day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system,

And I hereby certify that I have mailed a copy of the forgoing via United States Mail properly addressed, postage prepaid first class to:

Carl V. Marshall, AIS # 110574
Red Eagle Honor Farm
1290 Red Eagle Road
Montgomery, AL  36110

/s/ Neal P. Conner
NEAL P. CONNER (CONN2024)
ASSISTANT GENERAL COUNSEL

9

10

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CARL V. MARSHALL, 110574,
     Plaintiff,                         :
                                            :

vs.                                        :  CIVIL ACTION NO. 2:06-CV-1131-MHT
                                          :

RICHARD ALLEN, et al.,             :
                                          :
     Defendants.                   :

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at Large, personally appeared  Richard Naile, Correctional  Lieutenant, who being known to me and being by first duly sworn, deposes and says the following.

My name is Richard Naile. I am currently employed with the Alabama Department of Corrections as a Correctional Lieutenant at Red Eagle Honor Farm in Montgomery, Alabama. I am over twenty-one years of age.

I, as the Second Shift Commander, did oversee the issue of Christmas Packages to Red Eagle Honor Farm inmates who were eligible.  When advised that inmate Marshall's package had arrived at the Institution, and that it was not authorized due to his having received disciplinary action, I advised inmate Marshall the package was not authorized and would be returned. I acted as directed by my superiors pertaining to this incident. I did not violate any procedure, rule, regulation, or law by not issuing inmate Marshall the package.

I did not nor have I ever denied inmate Marshall the privilege of Law Library access. I am unaware of inmate Marshall ever having "assisted" other inmates with their legal work. I have never taken any type disciplinary action against inmate Marshall. To my knowledge, the Law Library Computer hardware was never, nor has it ever been removed from the library. I have never been asked for any type of "legal supplies" by inmate Marshall, therefore I never denied him. However, when it was learned that abuses/misuses of the privilege and equipment was occurring, I was instructed to have the printer cartridge


DEFENDANT'S
EXHIBIT
1

removed until guidelines could be obtained from the Departments Legal division. Again, I acted at the direction of my superiors. During my watch, all inmates were afforded access to the Red Eagle Law Library.

I have never knowingly subjected inmate Marshall to any state health law violations, state fire code violations, exposure to contagious disease or the spread of such diseases. Nor have ever I denied inmate Marshall proper medical care and or emergency medical care/treatment.

I did not nor have I ever conspired, retaliated, denied, or discriminated against inmate Marshall. I have not violated any of inmate Marshall's constitutional rights.

LT. RICHARD NAILE

STATE OF ALABAMA:

COUNTY OF MONTGOMERY:

Sworn to and subscribed before me and given under my hand and official seal on this the ___6th___

day of __February__, 2007.

NOTARY'S SIGNATURE

My Commission expires __8-26-2007__ (Date)

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

CARL MARSHALL, #110574          :
                               :
    Plaintiff,          :
                               :
vs.                            :          Case No. 2:06-CV-1131-MHT
                               :
RICHARD ALLEN, et al.,         :
                               :
    Defendant           :

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at Large, personally appeared Joseph Womble who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Joseph Womble. I am currently employed with the Alabama Department of Corrections as a Correctional Captain at Red Eagle Honor Farm in Montgomery, Alabama 36110. I am over twenty-one years of age and have personal knowledge of the facts set forth below.

An email was received from the Commissioner's Office to follow AR448 in administering Christmas packages. Inmate Marshall received a citation on 12-8-06, which made Inmate Marshall ineligible to receive a Christmas package. These requirements were placed in the inmate's newsletter.

The law library was not closed; the printer was taken off line until I received clarification on what was to be printed from the computers. After receiving that information from Mr. Kim Thomas the printer was placed back on line. Supplies were ordered on 1-29-07 and placed in the law library on 2-1-07. Inmate Marshall did not request any supplies from me for legal work.

I deny that I discriminated or retaliated against inmate Marshall in any manner. I have no knowledge of inmate Marshall's legal activities.

                                                _Joseph Womble_
                                      JOSEPH WOMBLE

DEFENDANT'S EXHIBIT 2

STATE OF ALABAMA:

COUNTY OF MONTGOMERY:

Sworn to and subscribed before me and given under my hand and official seal on this the _7th_

day of _February_ , 2007.

_Jennifer A. Baker_
NOTARY'S SIGNATURE

My Commission expires _8-26-2007_ (Date)

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

CARL MARSHALL, #110574                       :
     Plaintiff,                            :
                              :
     vs.                                   :     Case No. 2:06-CV-1131-MHT
                              :
RICHARD ALLEN, et al.,                       :
                              :
     Defendant                             :

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at Large,

personally appeared Edwin Charles Lane who being known to me and being by me first duly sworn,

deposes and says on oath as follows:

My name is Edwin Charles Lane. I am currently employed with the Alabama Department of

Corrections as a Correctional Lieutenant at Red Eagle Honor Farm in Montgomery, Alabama 36110. I am

over twenty-one years of age and have personal knowledge of the facts set forth below.

Inmate Carl Marshall alleges that I deprived Inmate Carl Marshall of his Christmas package.  Inmate

Carl Marshall alleges that I conspired to deny Inmate Carl Marshall of a Christmas package after Inmate

Carl Marshall filed a complaint against Red Eagle Honor Farm.

According to Alabama Department of Corrections Administrative Regulation 448: Inmate Mail and

Red Eagle's SOP, inmates that receive informal/formal disciplinary action during the months of November

or December are prohibited from receiving Christmas packages.  Criteria for receiving a Christmas package

was provided in the newsletter in the months of October 2006 through December 2006.  I am not aware of

any complaint that Inmate Carl Marshall filed against Red Eagle Honor Farm.  I deny depriving and

conspiring against Inmate Carl Marshall in order to keep Inmate Carl Marshall from receiving a Christmas

package.

On page #4 of said complaint Inmate Carl Marshall alleges that I retaliated against Inmate Carl

Marshall for using the Law Library to assist other inmates and violated Inmate Carl Marshall's

constitutional rights using unwritten policy to take funds and a Christmas package.



DEFENDANT'S
EXHIBIT
3

I deny retaliating against Inmate Carl Marshall for assisting other inmates in the Law Library. I deny conspiring to take funds from Inmate Carl Marshall. I am not aware of Inmate Carl Marshall using the Law Library nor assisting other inmates with their legal work.

Inmate Carl Marshall received informal disciplinary action in the month of December. Under Alabama Department of Corrections Administrative Regulation 448: Inmate Mail and Red Eagle's Standard Operating Procedure inmates who receive informal/formal disciplinary action during the months of November and December are not eligible for a Christmas package. I deny conspiring with any defendant of said civil action and or staff member of Red Eagle Honor Farm to deprive Inmate Carl Marshall of a Christmas package.

On page #5 of said complaint Inmate Carl Marshall alleges that I violated his 4th, 6th, 8th, and 18th constitutional rights. I deny any and all allegations levied against myself by Inmate Carl Marshall in said civil complaint and have not nor will not violate Carl Marshall's well defined and well documented constitutional rights.

_Edwin Charles Lane_
EDWIN CHARLES LANE

STATE OF ALABAMA:

COUNTY OF MONTGOMERY:

Sworn to and subscribed before me and given under my hand and official seal on this the _7th_ day of _February_, 2007.

_Jennifer A. Baker_
NOTARY'S SIGNATURE

My Commission expires _8-26-2007_ (Date)

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

CARL MARSHALL, #110574   :
           :
  Plaintiff,      :
           :
  vs.         :  Case No. 2:06-CV-1131-MHT
           :
RICHARD ALLEN, et al.,   :
           :
  Defendant     :

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at Large, personally appeared Jerry Odom who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Jerry Odom. I am currently employed with the Alabama Department of Corrections as a Correctional Officer at Red Eagle Honor Farm in Montgomery, Alabama 36110. I am over twenty-one years of age and have personal knowledge of the facts set forth below.

All computer equipment for Red Eagle Honor Farm has been placed in the Law Library and is working correctly. The equipment has not been removed from the Law Library since being placed there.

I have no knowledge of Inmate Marshall being retaliated against for filing complaints against state officials. It is against Red Eagle Honor Farm's SOP for one inmate to do another inmate's legal work. However, I have no knowledge of inmate Marshall being retaliated against.

I have no knowledge of Inmate Marshall being retaliated against by myself for exercising his 1st and 6th amendment rights under the constitution. And there have been no conspiracy against Inmate Marshall.

All inmates at Red Eagle Honor Farm have access to the Law Library no matter what race or color. All computer equipment for Red Eagle Honor Farm Law Library and all hardware are in the Law Library working to its fullest.

Red Eagle Honor Farm has a fully operational Law Library. This seems to be the extent of the



DEFENDANT'S
EXHIBIT
4

complaints against me that were filed by Inmate Marshall.  I deny all allegations of racism, retaliation, and conspiracy against Inmate Marshall.  I have not and will not violate any of Inmate Marshall's well established Constitutional Rights.

JERRY ODOM   COI

STATE OF ALABAMA:

COUNTY OF MONTGOMERY:

Sworn to and subscribed before me and given under my hand and official seal on this the ___7th___ day of ___February___, 2007.

Jennifer a. Baker
NOTARY'S SIGNATURE

My Commission expires ___8 - 26 - 07___ (Date)

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

CARL MARSHALL, #110574       :

     Plaintiff,            :

vs.                     :     Case No. 2:06-CV-1131-MHT

RICHARD ALLEN, et al.,       :

     Defendant         :

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at Large,

personally appeared Charles Hadley who being known to me and being by me first duly sworn, deposes

and says on oath as follows:

My name is Charles Hadley. I am currently employed with the Alabama Department of Corrections as

a Warden II at Red Eagle Honor Farm in Montgomery, Alabama 36110. I am over twenty-one years of age

and have personal knowledge of the facts set forth below.

Inmate Carl Marshall was denied his Christmas package in accordance with established guidelines. I

have not conspired or retaliated against Inmate Marshall, nor have I violated any of his constitutional

rights. Inmate Marshall has never been denied access to courts at Red Eagle Honor Farm. I have not

made any decisions based on Inmate Marshall's racial origin. Cleanliness is a top priority at this facility. I

am not aware of any illnesses or injuries related to any health or fire code violations.

CHARLES HADLEY

STATE OF ALABAMA:

COUNTY OF MONTGOMERY:

Sworn to and subscribed before me and given under my hand and official seal on this the ___15th___

day of __February__, 2007.

Jennifer A. Baker
NOTARY'S SIGNATURE

My Commission expires ___8-26-2007___ (Date)

DEFENDANT'S
EXHIBIT
5

INMATE _____ AIS: _105 14_ DC ___ I/BED #: _A-62_

FACILITY: _Red Eagle Honor Farm_ Job Asgmt: _ACI - 11_ Custody: _Min_

The above named inmate is cited by _COI D. Holmes_ for the following

Rule # _64_ violation(s) of Institutional / departmental rule(s) as described: _You inmate Carl Marshall_
_B/m 110574 did have in your locker box #62 (1) onion, (1) tator mater_
_(1) (1) small plastic wrap which contained sugar when searched by coi Holmes_
_Since these items are unauthorized (1) onion + (1) tator mater and not_
_sold on the store as sugar is not sold on the store wrapped in plastic this_
Date of Infraction: _11-29-06_ Time of Infraction: _11:33_
_places you in rule violation # 64 Possession of Contraband._

Location of Infraction: _Dorm A-Bed #62_

_COI D. Holmes_
Citing Employee / typed name / rank

_COI Delma Holmes_
Citing Employee's Signature / Date

*************************************************************************

I have investigated the circumstances surrounding this citation and recommend that the following sanction(s) be taken against this inmate:

( ) Counseling/Warning       (✓) Loss of Telephone privileges for _30_ days

(✓) Loss of Canteen Privileges for _30_ days    ( ) Removal from Incentive Program

(✓) Loss of Visiting Privileges for days _30_     ( ) Removal from Hobby Crafts Program

( ) Extra duty for _____ days at _____ hours per day under supervision of _____ shift

_Inmate Refuse to sign 30 nov 06_   _/COI Mach c. udell_   _Ft Edmonson  11-30-06_
Inmates Signature / AIS / Date                Shift Supervisor Signature / Date

*************************************************************************

After having reviewed this citation and the recommendation sanction(s) presented, the following action is approved:

( ✓ ) Citation and sanctions are approved.

( ) Citation and sanctions are approved as modified: _____          _12-5-06_

( ) Citation and sanctions are disapproved and formal disciplinary action is to be immediately
initiated under the provisions of ADOC AR 403.

( ) Citation and sanctions are disapproved. Expunge action from inmate's file.

_____          _Joseph Wombel  12/5/06_
Effective Date of Sanctions          Warden / Designee's Signature / Date

*************************************************************************

Inmate receipt of completed action: _Inmate Refused to Sign (Lena Shepherd COI)_

Serving Officer's Initials: _LS_          Inmate's Signature / AIS / Date  _12/5/06_

*************************************************************************

Distribution: ( ) Captain   ( ) Shift Commander _____ shift   ( ) Business Office
( ) ICS (as required)   ( ) Psychologist   ( ) Classification   ( ) Central Records   ( ) File



DEFENDANT'S EXHIBIT 6

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: Red Eagle Honor Farm | 2. Date: 11-29-06 | 3. Time: 11:20 AM | 4. Incident Number: RE-06-571 | Class Code: C |
|---|---|---|---|---|
| 5. Location Where Incident Occurred: Dorm A Bed #62 | | 6. Type of Incident: #64 Possession of Contraband | | |
| 7. Time Incident Reported: 11:25 AM | | 8. Who Received Report: Lt. Edwin Lane  *Lt Edwin Lane* | | |

**9. Victims:**      Name                                      AIS

a.  NA                                No. _____

b.  _____                       No. _____

c.  _____                       No. _____

| 10. Suspects: Name | AIS | 11. Witnesses: Name | AIS |
|---|---|---|---|
| a. Carl Marshall | No. B/110574 | a. NA | No. |
| b. Henry Bailey | No. B/212529 | b. | No. |
| c. | No. | c. | No. |
| d. | No. | d. | No. |
| e. | No. | e. | No. |
| f. | No. | f. | No. |
| g. | No. | g. | No. |

**PHYSICAL EVIDENCE:**

**12. Type of Evidence**

(1) Onion, (1) wrapped small bag of sugar, (1) tattoo motor

**13. Description of Evidence**

(1) brown onion, (1) plastic wrapped bag of sugar; approximately 3 ounces, in clear plastic, (1) gray battery powered motor approximately 2 inches long, approximately 1 inch wide.

**14. Chain of Evidence:**

a  Locker Box #62

b  COI Debra Holmes

c  Disposed of according to Admin. Reg. 306

d

e

**15. Narrative Summary:**

On 11-29-06 at approximately 11:20 AM COI D. Holmes, while walking in Dorm-A COI, D. Holmes noticed what appeared to be a cell phone charger plugged into the wall behind Bed #62, which is occupied by Inmate Carl Marshall B/110574. As COI D. Holmes unplugged the charger she noticed that the charger cord was coming from the inside of a sock which was in the jacket pocket, which had laundry ID number 322 marked on the front of the jacket, which was hanging on Bed #61. The jacket was found to belong to Inmate Henry Bailey B/212529. The total contents of the sock revealed to be (1) cell phone (LG), silver and blue in color, (1) blue cell phone case and (1) black cell phone clip. COI D. Holmes advised Lt. Edwin Lane via radio at approximately 11:23 AM to report to A-Dorm. At approximately 11:24 AM Lt. Lane arrived in Dorm-A and was apprised of the cell phone and accessories. Lt. Lane confiscated the cell phone and accessories. Per Lt. Lane Bed #61 and #62 were to be searched. COI D. Holmes began searching Bed #61 where under the mattress (1) bag of sugar, (1) bag of raisins and a small amount of powdered cheese. A search of Box #61 revealed no contraband. COI D. Holmes then began looking behind Bed #62 where she discovered a large brown bag containing (11) small bags of sugar and (1) can of Bartlett pears. Further discovering (2) Kool-aid containers which contained fermented fruit. COI D. Holmes then advanced to Box #62 which was locked. COI D. Holmes radioed Lt. Lane to seek permission to get the pass key to the lock. Per Lt. Lane COI D. Holmes could use the pass key to open Box #62, which is the resident of Carl Marshall B/110574. Upon opening Box #62 COI D. Holmes found (1) onion, (1) tattoo motor and (1) small bag of sugar. At approximately 11:30 AM Lt. Lane, the on-duty supervisor was apprised of the contraband. The contraband will be disposed of according to Admin. Reg. 306. Inmate Carl Marshall will receive a citation for Rule #64 – Possession of Contraband.

*COI D. Holmes*

COI D. Holmes

FEB. 14, 2007              USER: HAZEL HARSEY                        INMACI
          INMATE ACCOUNT INFORMATION FROM OCT. 01, 2006 THRU FEB. 14, 2007

   AIS#:   110574    NAME: MARSHALL, CARL          CURRENT BAL:       $20.82

| DATE OF TRANS. | PREVIOUS BALANCE | TRANS. NUMBER | NAME OF SENDER/PAYEE | TYPE OF TRANS. | TRANS. AMOUNT | AMOUNT DEDUCTED |
|---|---|---|---|---|---|---|
| 11/13/2006 | $0.77 | 000964 | D.O.C.  INDUSTRY | MISC. DEP | $3.90 | $0.00 |
| 11/13/2006 | $4.67 | 001007 | D.O.C.  INDUSTRY | MISC. DEP | $4.80 | $0.00 |
| 11/13/2006 | $9.47 | 001019 | D.O.C.  INDUSTRY | MISC. DEP | $0.90 | $0.00 |
| 11/13/2006 | $10.37 | 001028 | D.O.C.  INDUSTRY | MISC. DEP | $8.70 | $0.00 |
| 11/13/2006 | $19.07 | 001053 | D.O.C.  INDUSTRY | MISC. DEP | $2.40 | $0.00 |
| 11/13/2006 | $21.47 | 001088 | D.O.C.  INDUSTRY | MISC. DEP | $7.20 | $0.00 |
| 11/13/2006 | $28.67 | 001093 | D.O.C.  INDUSTRY | MISC. DEP | $12.00 | $0.00 |
| 11/13/2006 | $40.67 | 001105 | D.O.C.  INDUSTRY | MISC. DEP | $3.90 | $0.00 |
| 11/14/2006 | $44.57 | 001150 | ARTHUR MARSHALL | MISC. DEP | $110.00 | $0.00 |
| 11/15/2006 | $154.57 | 001510 | PMOD ACCOUNT | CANTEEN SL | $35.91 | N/A |
| 11/15/2006 | $118.66 | 001511 | PMOD ACCOUNT | CANTEEN SL | $22.94 | N/A |
| 11/16/2006 | $95.72 | 001659 | PMOD ACCOUNT | CANTEEN SL | $3.09- | N/A |
| 11/27/2006 | $98.81 | 000211 | AMERICAN COMMISSARY | MISC. WDRL | $81.55 | N/A |

          MORE TRANSACTIONS ON FILE

               PRESS ENTER TO CONTINUE

   FEB. 14, 2007              USER: HAZEL HARSEY                      INMACI
          INMATE ACCOUNT INFORMATION FROM OCT. 01, 2006 THRU FEB. 14, 2007

   AIS#:   110574    NAME: MARSHALL, CARL          CURRENT BAL:       $20.82

| DATE OF TRANS. | PREVIOUS BALANCE | TRANS. NUMBER | NAME OF SENDER/PAYEE | TYPE OF TRANS. | TRANS. AMOUNT | AMOUNT DEDUCTED |
|---|---|---|---|---|---|---|
| 11/29/2006 | $17.26 | 001817 | PMOD ACCOUNT | CANTEEN SL | $16.78 | N/A |
| 12/18/2006 | $0.48 | 001743 | D.O.C.  INDUSTRY | MISC. DEP | $28.20 | $0.00 |
| 12/18/2006 | $28.68 | 001784 | D.O.C.  INDUSTRY | MISC. DEP | $4.80 | $0.00 |
| 12/18/2006 | $33.48 | 001789 | D.O.C.  INDUSTRY | MISC. DEP | $7.80 | $0.00 |
| 12/18/2006 | $41.28 | 001809 | D.O.C.  INDUSTRY | MISC. DEP | $1.80 | $0.00 |
| 12/18/2006 | $43.08 | 001821 | D.O.C.  INDUSTRY | MISC. DEP | $0.90 | $0.00 |
| 12/18/2006 | $43.98 | 001844 | D.O.C.  INDUSTRY | MISC. DEP | $0.30 | $0.00 |
| 12/18/2006 | $44.28 | 001851 | D.O.C.  INDUSTRY | MISC. DEP | $1.20 | $0.00 |
| 12/18/2006 | $45.48 | 001871 | D.O.C.  INDUSTRY | MISC. DEP | $0.60 | $0.00 |
| 01/04/2007 | $46.08 | 002878 | PMOD ACCOUNT | CANTEEN SL | $26.03 | N/A |
| 01/04/2007 | $20.05 | 002879 | PMOD ACCOUNT | CANTEEN SL | $13.25 | N/A |
| 01/05/2007 | $6.80 | 002974 | PMOD ACCOUNT | CANTEEN SL | $1.99 | N/A |
| 01/10/2007 | $4.81 | 002320 | ARTHUR MARSHALL | MISC. DEP | $20.00 | $0.00 |

          MORE TRANSACTIONS ON FILE

               PRESS ENTER TO CONTINUE

   FEB. 14, 2007              USER: HAZEL HARSEY                      INMACI
          INMATE ACCOUNT INFORMATION FROM OCT. 01, 2006 THRU FEB. 14, 2007

   AIS#:   110574    NAME: MARSHALL, CARL          CURRENT BAL:       $20.82

| DATE OF TRANS. | PREVIOUS BALANCE | TRANS. NUMBER | NAME OF SENDER/PAYEE | TYPE OF TRANS. | TRANS. AMOUNT | AMOUNT DEDUCTED |
|---|---|---|---|---|---|---|

**STATE OF ALABAMA**
**Red Eagle Honor Farm**
**1290 Red Eagle Road**
**Montgomery, Alabama 36110**

**STANDARD OPERATING PROCEDURE**                    **OPR: Warden**

**09 - 05**

## Emergency Fire Procedures

**I.    GENERAL**

This Alabama Department of Corrections (ADOC) Institutional Standard Operating

Procedure (SOP) establishes the responsibilities, policies, and procedures for all

employees and inmates at Red Eagle Honor Farm.

**II.    POLICY**

It is the policy of Red Eagle Honor Farm that all employees will be familiar with and

follow the procedures set forth in this Standard Operating Procedure.

**III.    DEFINITION (S) AND ACRONYM (S)**

**Yellow Fire Alert**:  The yellow fire alert will be placed in effect when there is a small

controllable fire of a non-threatening nature.

**Red Fire Alert**:  The red alert will be placed in effect when there is a major

uncontrollable fire that is life threatening.

**IV.    RESPONSIBILITIES**


DEFENDANT'S EXHIBIT 7

All employees of Red Eagle Honor Farm are responsible to keep all areas in such a manner that will prevent fires. Any employee discovering a fire is responsible for notifying the shift commander. The shift commander is responsible for evaluating the situation and determines what action needs to be taken. The shift commander is responsible for conducting a fire drill monthly (third shift will conduct a simulated fire drill) and documenting the fire drill on an incident report.

A.    Warden:

    1.    The Warden will be the Official –in-Charge (OIC).

    2.    The Warden is responsible for overseeing the entire application of the fire plan.

    3.    The Warden will coordinate all aspects and provisions of the plan and delegate specific responsibilities.

    4.    The Warden has appointed the Maintenance Supervisor as the Fire Safety Officer.

B.    Captain of the Guard:

    1.    The Captain will assume the role of OIC in the absence of the Warden.

    2.    The Captain is responsible with all outside agencies, such as County Fire Departments, the Sheriffs office, and other institutional personnel that are assisting.

    3.    The Captain will coordinate all operations with the command Center and maintain clear and open communication between the security staff engaged in the implementation of the Fire Plan.

C.    Shift Commander

    1.    The Shift Commander is responsible for the overall command of the emergency until the arrival of the Warden or Captain.

    2.    The Shift Commander is responsible for overseeing the operation and insuring that the proper records and logs are kept.

    3.    The Shift Commander will be responsible for coordinating the emergency plans and insuring their effectiveness.

V.    **PROCEDURES**

A.    Shift Commander

    1.    Upon notification of a fire, the Shift Commander will instruct the appropriate staff member to visually verify the fire and obtain a verbal report to determine the exact size, nature and location of the fire.

    2.    The Shift Commander will then determine if this plan is to be implemented and declare the appropriate alert level for the fire.

    3.    The Shift Commander will sound the fire alarm, if necessary, and evacuate the dormitories to the area behind the smoking area and administrative offices to the front parking lot. (See attachments for evacuation routes and meeting areas.).  A formal count will be conducted once the evacuation is complete.  All personnel and inmates will be accounted for.

    4.    The Shift Commander will instruct an officer to begin emergency notifications and begin a detail log of events.

5.  The Shift Commander will determine if the fire can be extinguished without the assistance of the fire department, if not contact the Montgomery Fire Department Station #8 located on Lower Wetumpka Road at 832-4469 or dial 911.

6.  The Shift Commander will notify the Warden, Captain, and Maintenance Supervisor.

B.  Officers

1.  The Officers will unlock all exit doors and ensure all inmates and personnel exit the buildings.

2.  The Officers will notify the Shift Commander when the evacuation is completed.

3.  The officers will conduct a count of inmates and inmates will stay grouped by dormitories.

4.  An Officer will remain with the inmates to ensure security.

5.  The other Officers will report to the Shift Commander for further instructions.

C.  Support Personnel:

1.  All support personnel will evacuate the building and report to the front parking lot.

2.  Support Personnel will evacuate through the side door if possible. The Secondary Route will be to exit through the Shift Office.

D.  Maintenance Personnel

1. Maintenance will assist the Shift Commander in interrupting utilities and provide assistance to the Shift Commander as needed.

2. Maintenance will test Fire Equipment monthly, to include fire extinguishers and pressure testing of hoses and turning on of Water Hydrates. Maintenance will document the testing of the equipment on a tag affixed to the equipment.

## VI.    DISPOSITION

Any forms will be disposed of and/or retained according to the Departmental Records Disposition Authority (RDA).

## VII.   FORMS

Fire Evacuation Routes
Emergency List of Telephone Numbers

## VIII.  SUPERCEDES

This Standard Operating Procedure supersedes SOP # 9-05 Dated 5/14/2002 Fire Safety and Weather Alerts and any memorandums to date.

## IX.    PERFORMANCE

None

_9-18-06_
Date Completed

C.I. Hadley, Warden
Red Eagle Honor Farm

5

# RED EAGLE HONOR FARM

## EVACUATION PLAN



# EMERGENCY TELEPHONE LIST

| | |
|---|---|
| **Alabama Power Company** | **334-223-5001** |
| **Bellsouth** | **800-247-2020** |
| **Black Box   (Customer # 106394)** | **800-766-7687** |
| | **334-409-5901** |
| **Boylston Post Office** | **334-265-1102** |
| **Ferrellgas  LP        (Propane Gas)** | **205-516-9224** |
| **Martin Damn** | **205-257-3335** |
| | **800-525-3711** |
| **Montgomery Water Works** | **334-206-1600** |
| **Lagoon Post Office** | **334-279-3172** |
| **Pest Control** | **334-215-1682** |
| **Risk Management** | **334-223-6133** |
| **Southeast Alabama Gas   (Natural Gas)** | **334-382-2643** |
| **T-Netix            (Inmate Phones)** | **888-286-3849** |
| **Time and Weather** | **334-323-7000** |
| **WAKA Weather** | **334-242-3252** |





*State of Alabama*

*Alabama Department of Corrections*

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

February 7, 2005

ADMINISTRATIVE REGULATION                    OPR:  LEGAL
NUMBER                    412

## INSTITUTIONAL LAW LIBRARIES

### I.     GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for institutional law libraries.

### II.    POLICY

It is the policy of the ADOC to provide legal resource libraries and to permit all inmates access to the materials available.

### III.   DEFINITION(S) AND ACRONYM(S)

CD:  Compact Disk

### IV.    RESPONSIBILITIES

Wardens/designees are responsible for the operation and maintenance of institutional law libraries.

### V.     PROCEDURES

A.     Destruction of or damage to law library books, CDs or materials.

    1.     Any general population inmate who has been found guilty of violating Administrative Regulation 403, Disciplinary Hearing Procedures for Major Rule Violations, Rule #69 (destruction or damaging state Property) that involves the destruction or damaging of law library books, CDs or other materials, may be denied physical access to the law library for up to 30 days. During the time that physical access to the law library is denied, the inmate will be permitted to request and receive the same law library privileges as are afforded inmates confined to segregation.



DEFENDANT'S
EXHIBIT
8

2.    If an inmate confined to segregation fails or refuses to return checked-out Law library books or materials upon demand, correctional staff may enter that inmate's cell in order to retrieve the law library books or material.

3.    The institutional law library supervisor will document each incident of theft, damage, destruction or refusals to return law library books or materials.

B.    Missing books, pages, materials.

In the event that an inmate discovers that a book(s), or page(s) of a book, or other materials, are missing from the law library that are necessary to the inmate's legal research, the inmate should report this to the institutional law library supervisor by submitting Form N944L i, "Access to Legal Material".

## VI.   **DISPOSITION**

Any documents will be retained or disposed of according to the Departmental Records Disposition Authority (RDA).

## VII.   **FORMS**

Form N944L i – Access to Legal Material (Refer to AR 214)

## VIII.   **SUPERCEDES**

This Administrative Regulation supercedes AR 412 dated August 18, 1992.

## IX.   **PERFORMANCE**

A.    Administrative Regulation 214. "Law Library Supervisors"

B.    Administrative Regulation 403, "Disciplinary Hearing Procedures for Major Rule Violations."

Donal Campbell, Commissioner

AR 412– February 7, 2005





## State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**BOB RILEY**
GOVERNOR

**DONAL CAMPBELL**
COMMISSIONER

December 19, 2005

ADMINISTRATIVE REGULATION                    OPR: OPERATIONS
NUMBER                    448

## INMATE MAIL

### I.    GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for inmate mail.

### II.    POLICY

It is the policy of the ADOC to allow inmate mail in accordance with the U.S. Postal Service regulations and the guidelines set forth in this regulation.

### III.    DEFINITIONS

A.    <u>Contraband</u>:  Any item that is not permitted by law or is either prohibited or not specifically authorized by ADOC or institutional policy. Items not issued by the ADOC, not sold on the institutional canteen, or not specifically authorized by the Warden.

B.    <u>Correspondence</u>:  Written communication to or from inmates (e.g., letters, post cards, greeting cards) delivered by a postal service.

C.    <u>Inmate Personal Property</u>:  The items and amounts of clothing, equipment, mail, or supplies, which an inmate is allowed to have in his/her immediate possession.

D.    <u>Mail</u>:  For the purpose of this regulation, the term "mail" includes but is not limited to: items delivered by the U.S. Postal Service, inter-institutional mail, and any private carrier servicing the ADOC.

E.    <u>Mail Clerk</u>:  Staff member(s) assigned to the institutional mailroom.

F.    <u>Printed Materials</u>:  Books, publications, magazines, newspapers, periodicals, circulars, and catalogues delivered by the postal services.

G.    <u>Legal Mail</u>:  Letters to and from attorneys, courts, judges, clerks, and other officials of the courts and governmental agencies.



DEFENDANT'S
EXHIBIT
9

H.  <u>Reasonable Suspicion</u>:  Rational inference that a reasonably prudent person could make from specific objective facts.

I.  <u>Internet Materials</u>:  Downloaded copy from a web site.

J.  <u>Religious Materials</u>:  Books, pamphlets, brochures, and religious study courses.

K.  <u>Nudity</u>:  A pictorial depiction where genitalia or female breasts are exposed. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

L.  <u>Sexually Explicit</u>:  A picture/illustration of actual or simulated sexual intercourse, and/or oral sex, masturbation, or materials depicting sex.

## IV.  **RESPONSIBILITIES**

A.  The Warden shall be responsible for developing their institution/division Standard Operating Procedure (SOP) in accordance with AR 448, *Inmate Mail*.

B.  The Mail Clerk is responsible for the collection, inspection, and distribution of incoming/outgoing mail and for the maintenance of the mailroom records.

C.  The Chaplain or the Warden's designee is responsible for reviewing all mail entering the institution for an inmate that has been marked in care of the chaplain as it refers to religious materials.

## V.  **PROCEDURES**

A.  General Guidelines

1.  The inmates shall be permitted to send and receive correspondence unless it can be determined that such correspondence may present a threat to the safety and security of the public, staff, inmates, and institution.

2.  There is no limit on the volume of letters the inmate can send or receive, or on the language, content, or source of mail except when there is reasonable belief that limitation is necessary to protect the public safety or maintain institutional order.

3.  The Warden shall designate a secure mail area and drop boxes for outgoing mail accessible to all inmates.

4.  Mail between inmates, whether state, county, city, out-of-state or federal may be allowed with the permission of the Wardens involved. It must be shown that there is a close personal relationship (immediate family) between such inmates.

AR 448 – December 19, 2005

5. Mail and packages addressed to an inmate, who has been transferred or released to another known address, should be mailed to the inmate within 48 hours, excluding weekends and holidays.

    a. If a forwarding address is not available, such mail and packages shall be returned to the sender.

    b. If neither a forwarding or return address is available, the mail shall be returned to the post office.

6. All inmate mail shall remain under the supervision of staff until it is distributed. Inmates are not allowed in the mail area without supervision.

7. At no time shall mail be distributed or handled by an inmate or be accessible to any inmate other than the addressee.

8. A staff person shall deliver incoming mail to the inmate(s) to whom it is addressed.

B. Incoming Mail

1. All incoming mail must be addressed so as to specify the inmate's name, inmate AIS number, and location within the institution.

2. An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name. (See AR 450, *Legal Name Changes)*

3. Promotional checks will not be accepted through the mail for deposit to inmate accounts.

4. Correspondence, printed material, inmate personal property, or money will not be hand delivered to inmates by visitors. The Warden/designee may allow attorneys to hand deliver "Legal Mail" directly to the inmate, subject to being searched for contraband.

5. Inmate will not receive mail stamped "Collect on Delivery (COD)."

C. Outgoing Mail

1. All mail being sent from the institution must have a return address which will include: inmate's full name, inmate AIS number, name of institution, dorm/cell number, street address or P. O. Box number as appropriate, city, state, and zip code. Additionally, the following stamped disclaimer will be included on every piece of outgoing mail sent by inmates.

AR 448 – December 19, 2005

"This correspondence if forwarded from Alabama State Prison. The contents have not been evaluated, and the ADOC is not responsible for the substance or content of the enclosed communication."

2.    An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name.  (See AR 450, *Legal Name Changes)*

3.    Designated staff should collect outgoing mail once each business day.

D.    Legal Mail

    1.    Outgoing

        a.    Inmates will be provided two (2) free stamps per week for **legal mail** only.

        b.    Each Warden shall designate a box for "Legal Mail."

    2.    Incoming

        a.    A bound ledger shall be maintained by mailroom staff that lists each piece of legal mail received, the date inspected, delivered, and recipient's signature.

        b.    The inmate will sign for all "Legal Mail" prior to receipt.

        c.    All "Legal Mail" will be opened and inspected in the presence of the inmate.

E.    Limitations

    1.    When abuses are found, the Warden may prohibit further correspondence by the inmate with the person to whom the offending material was directed.

    2.    When the Warden receives a request to terminate correspondence with an inmate, the Warden shall notify the inmate of the request and inform the inmate that further correspondence with the individual shall cease.

    3.    The Warden/designee will provide documentation that will be placed in the mail area and in the inmate's institutional file of persons with whom the inmate may no longer correspond.

AR 448 – December 19, 2005

F.     Inspection

    1.     Incoming mail, including "Legal Mail", shall be inspected for contraband and/or for abuse of the mail privilege. Outgoing mail may be inspected for contraband.

    2.     All contraband will be disposed of in accordance with AR 306, *Contraband and Evidence Management*.

    3.     Every effort should be made to ensure that all incoming letters and packages are delivered within 72 hours after receipt at the institution, other than weekends and holidays. Inmates will be notified of rejected mail in accordance with procedures contained in V.G.

G.     Rejection

    1.     In the event any incoming mail is rejected, the mail clerk will cite the policy violation and complete an ADOC Form 448, *Notification of Rejected Mail,* then forward to the inmate in a timely manner.

    2.     An inmate may appeal the rejection to the Warden/designee for review and final determination. (Refer to ADOC Form 448, *Notification of Rejected Mail*).

    3.     If the appeal is denied, the inmate will have the option of returning the mail to the sender at his/her own expense within 30 days, or the property will be destroyed at the end of the 30-day period.

    4.     Incoming mail may be determined to be a threat to the security of the institution and returned to the sender if, in the opinion of the Warden, it could reasonably be considered to:

        a.     Be an attempt to incite violence based on race, religion, sex, creed, or nationality.

        b.     Advocate, facilitate, or otherwise present a risk of lawlessness, violence, anarchy, and rebellion against government authority.

        c.     Be an attempt to incite disobedience toward law enforcement officials or correctional staff.

        d.     Be an attempt to give instructions for the manufacturing or use of intoxicants, weapons, explosives, drugs, drug paraphernalia, or other unlawful items or substance.

        e.     Contain obscene photographs, pictures, or drawings, including publications and advertisements from distributors.

f.    Contain plans to escape, unauthorized entry into the institution, or information or maps, which might aid an escape attempt.

g.    Contain information relating to security threat group activity or use of codes and/or symbols associated with security threat groups.

h.    Contain materials specifically found to be detrimental to inmate rehabilitation because it could encourage deviate criminal sexual behaviors.

i.    Publications that contain, nudity, graphic depictions of homosexuality, sadomasochism, bestiality, incest, or sex with children will be denied.

j.    Publications that primarily cover the activities of any sexual or political rights groups or organizations will normally be admitted.

k.    Before delivery of a publication may be denied, the Warden/designee must review the particular publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. It is not necessary to find that the particular recipient is likely to personally engage in such behavior before delivery can be denied.

5.    Abuse of mail privileges by inmates may result in rejection and possible disciplinary action. Abuses included but are not limited to the following:

a.    The writing of letters containing obscene, profane, or indecent language.

b.    Writings that contain threats, derogatory or personal attack against any person.

c.    Writings that contain an escape plot or any other clear threats to the institution.

d.    Receipt of mail, identified as legal mail, from any individual or agency not meeting the legal mail definition.

e.    Writing which contain language purporting to solicit, claim, or demand money, goods, or services by false statements, threats, intimidation or extortion from another person or firm is prohibited.

f.    Any written material in outgoing or incoming mail not specifically intended for the addressee identified on the exterior of the

AR 448 – December 19, 2005

envelope, i.e. sending mail with contents addressed to another party for forwarding which constitutes mail kiting.

H.    Publications/Books

1.    Inmates may receive no more than two books per month and four magazines or newspapers or a combination thereof. (Refer to AR 338, *Inmate Property*, for the number of items an inmate may have in his/her possession at one time.)

2.    The publications should be received directly from the publisher or a recognized commercial distributor and be pre-paid from a family member or friend or from the inmate's Prisoners Money on Deposit Account (PMOD).

3.    Receipt of publications by inmates in segregation will be determined by provision indicated in AR 433, *Administrative Segregation and Housing for Close or Maximum Custody*, and AR 434, *Disciplinary Segregation*.

4.    Each Warden/designee shall personally inspect each issue of a publication when a reasonable expectation that the particular issue violates the standards of this regulation. If they determine that the issue of the publication violates these standards then they will temporarily exclude the publication.

5.    The Warden/designee shall notify the inmate to whom the publication was addressed of the temporary ban.

6.    If the inmate appeals the temporary ban, it will remain in effect pending a final resolution. Upon notice of the appeal, the Warden will furnish a copy of the documentation on the matter to the Commissioner/designee. This documentation will include copies of pages of the excluded issue that contain material that has been identified as violating the restrictions.

7.    The Commissioner/designee will review the action taken by the institution to exclude that issue and either confirm or deny them. If the temporary ban is confirmed, the inmate, the Warden, and all other institutions will be notified, the issue is permanently banned, and the matter closed. The documentation supporting the ban will be retained by the Legal Division and at the institution.

8.    If the temporary ban is denied, the publication will be given to the inmate and the entire matter dropped and all documentation destroyed.

9.    The permanent ban of an issue of a publication may not be relied upon to support an exclusion of a subsequent issue. For example, if the January issue of XYZ magazine is permanently banned, this ban may not be used

AR 448 – December 19, 2005

to justify an exclusion of the February issue of XYZ magazine. Each separate issue must be evaluated independently in accordance with this regulation.

10. Inmates will not be allowed to be members of, enter into contractual agreements with, or participate in book clubs.

I. Packages

1. All religious materials such as books, pamphlets, brochures, and religious study courses shall be sent to the inmate in care of the Chaplain, and will be distributed by the Chaplain after approval and limits have been obtained from the Warden.

2. Authorized inmates will be allowed to purchase, from their PMOD accounts, arts and craft items through approved reputable suppliers.

3. Prior to Christmas, the Commissioner will publish instructions concerning the receipt of Christmas packages for inmates.

4. Criteria for an inmate to receive Christmas packages are as follows:

    a. Inmates must have a four (4) month clear record prior to November 1st – no disciplinaries or behavior citations.

    b. Inmates who receives one (1) formal or informal disciplinary in the months of November and December will not be eligible to receive a package.

    c. Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence of a serious nature will be restricted from receiving packages one year from the incident.

5. Incentive Packages will be accepted beginning May and September for one package per inmate from a person on the inmate's visitation/funds list. Packages postmarked after May 31 and September 30 will be returned to the sender C.O.D. Inmates must submit a request for an incentive package to the Warden/designee.

6. Criteria for an inmate to receive an incentive package are as follows:

    a. Inmate must have six-month clear record-no disciplinaries or behavior citations.

    b. Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence

AR 448 – December 19, 2005

of a serious nature will be restricted from receiving packages one year from the incident.

c.    Inmate should have two positive counselors/work reports within the six-month period preceding the package.

7.    An inmate may mail outgoing packages. However, these packages will be inspected for unauthorized items prior to dispatch. The sender-inmate must provide postage and wrapping materials.

8.    The Commissioner/designee may allow other packages as deemed appropriate.

## VI.   DISPOSITION

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.   FORMS

ADOC Form 448 – Notification of Rejected Mail

## VIII.  SUPERCEDES

This regulation formally included in Administrative Regulation 303, dated May 30, 2000.

## IX.   PERFORMANCE

ACA standards for Adult Correctional Institutions, fourth edition:  4-4487; 4-4490; 4-4491; 4-4492; 4-4494; 4-4496

Donal Campbell, Commissioner

AR 448 – December 19, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

**Notification of Rejected Mail**

From: _____    Date: _____
　　　　　Institutional Mail Room

To: Inmate _____ AIS#: _____

　　Cell/Dorm: _____ Bed #: _____

Correspondence From: _____

Date received at this Institution: _____

Is being returned to sender due to the following reason(s): _____
_____
_____
_____

The inmate has the option to return mail to sender at his/her own expense within thirty (30) days or the property will be destroyed.

The inmate has seventy-two (72) hours from the above date to appeal this return. State your reason(s) for appealing in writing below and return this form to the Warden/designee:

_____
_____
_____
_____
_____
_____
_____

_____ / _____
Inmate Signature　　　　　　　　　　　　　AIS#

_____
Date

**Appeal/Denied**　　　　　　　　　　**Appeal/Upheld**

_____　　　　_____
Printed Name　　　　　　　　　　　　Printed Name

_____　　　　_____
Authorized Signature　　　　　　　　Authorized Signature

_____　　　　_____
Date returned to sender　　　　　　　Date returned to inmate

**ADOC Form 448 – December 19, 2005**

10 of 10

AR 448 – December 19, 2005

**Womble, Joseph (DOC)**

| | |
|---|---|
| **From:** | Bohannon, Susan (DOC) |
| **Sent:** | Thursday, October 19, 2006 12:06 PM |
| **To:** | DOC -- #Warden Secretary; DOC -- #Wardens; DOC -- #WR Wardens; DOC -- #WR Wardens Secretary |
| **Subject:** | Christmas Package Criteria |

**Only the inmates meeting the Christmas package criteria established in Admin. Reg. 448 will be eligible to receive a Christmas package.**



## Womble, Joseph (DOC)

**From:**    Womble, Joseph (DOC)
**Sent:**    Wednesday, December 13, 2006 2:59 PM
**To:**       'Misty Fraser'
**Subject:** FW: Read: Mistake about the verfication list.

Misty,
Inmates Wright, Guthrie, Bolden, Marshall and Powell do not meet the criteria to receive their package.    What do I need to do with these packages?
Inmate Ladd transferred to another facility, I will forward this package to them.
Thanks, Joseph Womble

**From:** Womble, Joseph (DOC)
**Sent:** Friday, December 08, 2006 2:13 PM
**To:** 'Misty Fraser'
**Subject:** RE: Read: Mistake about the verfication list.

I have received and verified my list. I have 6 changes.

| Order # | Inmate Name | AIS # | Facility Code | |
|---------|-------------|-------|---------------|--|
| 672 | Willie Lewis Wright | 209612 | 10 | Can Not Receive |
| 1435 | Brian Guthrie | 157451 | 8 | Can Not Receive |
| 1472 | Kevin Bolden | 243343 | 10 | Can Not Receive |
| 1763 | Brain Ladd | 220267 | 69 | |
| 6203 | Carl Marshal | 110574 | 10 | Can Not Receive |
| 6638 | Leroy Powell | 227738 | 10 | Can Not Receive |

Is this all I need to do, please advise.
Notes:
Inmate Ladd was transferred from Red Eagle to Elmore.
Inmate Guthrie was transferred to Kilby pending disciplinary action.

Joseph Womble
Red Eagle Honor Farm

**From:** Misty Fraser [mailto:mfraser@acs-us.com]
**Sent:** Friday, December 08, 2006 10:39 AM
**To:** Womble, Joseph (DOC)
**Subject:** Read: Mistake about the verfication list.

Your message

   To: Misty Fraser
   Subject: RE: Mistake about the verfication list.
   Sent: 12/8/2006 10:26 AM

was read on 12/8/2006 10:38 AM.

12/14/2006



# ALABAMA DEPARTMENT OF PUBLIC HEALTH
## FOOD ESTABLISHMENT / RETAIL FOOD STORE INSPECTION REPORT

SCORE: 96

**Montgomery** COUNTY HEALTH DEPARTMENT

LEGAL NOTICE TO THE PROPRIETOR OR MANAGER: You are respectfully notified of such violations of the Alabama State Board of Health Rules for Food Establishment Sanitation as are indicated by a circle in the Inspection Report. This report constitutes an official notice to comply with Chapter 420-3-22 of the aforesaid Rules within a period of _____ days. Failure to comply with this notice may result in cessation of food service food store operations.

| ESTABLISHMENT NAME | OWNER OR MANAGER NAME |
|---|---|
| Red Eagle Honor Farm | State of Alabama |

| ADDRESS | | ZIP CODE |
|---|---|---|
| 1290 Red Eagle Road | Montgomery, AL 36110- | Date Prev Insp 03/31/05 |

| PERMIT NUMBER | MO. | DAY | YEAR | INSP. TIME | PERMITTED | PRIORITY CAT. | COMPLIANCE VISIT/ INSP. REQUIRED |
|---|---|---|---|---|---|---|---|
| | 04 | 10 | 06 | OUT | YES ☑ | 01 | YES ___ NO ___ |
| | | | | IN | NO | | |

43    Jail/Prison Food Service    CRITICAL ITEMS REQUIRING IMMEDIATE ACTION

## MANAGEMENT AND PERSONNEL

| | | |
|---|---|---|
| 01* | Assignment of Person in Charge; Commissary used. Personnel with infections restricted, excluded. No discharges from eyes, nose, mouth. | |
| 02* | Hands clean; properly washed. No bare hand contact; approved alternative. No eating, drinking, tobacco use. | 5 |
| 03* | Demonstration of knowledge: Approved course, other requirements met | +2 |
| 04 | Clean clothes; Hair restraints; Minimize. Authorized personnel. Other. | |

## FOOD

| | | |
|---|---|---|
| 05* | Safe; Source; Condition; Not adulterated; Shellstock tags; Compliance with plan/ROP. Other. | |
| 06* | Potentially hazardous food meets temperature requirements during receiving, cooking, hot holding, cooling. Pasteurized eggs used if required. | 5 |
| 07* | Potentially hazardous food meets temperature requirements during cold holding. Time as a public health control. Consumer Advisory used if required. | 5 |
| 08* | Food separated, protected from contamination. Tasting. Returned, reservice of food. | 5 |
| 09 | Cooling methods. Facilities to maintain product temperature. Plant food cooking. | |
| 10 | Properly labeled; Original container. Records. Code date limits. | 1 |
| 11 | Thermometers provided, accurate, conspicuous. | 1 |
| 12 | Approved thawing methods used. | 1 |
| 13 | Food contamination prevented during storage, preparation, display, handling, other. *use deep for flaw req* | 1 |
| 14 | In use, between use, food/ice dispensing utensils properly stored. | 1 |

## EQUIPMENT, UTENSILS, AND LINENS

| | | |
|---|---|---|
| 15* | Equipment; food contact surfaces (non-cooking) clean; sanitized. Sanitization temperature, concentration, time. | 5 |
| 16* | Food contact surfaces characteristics. Single service/use used when required. | 4 |
| 17 | Cooking surfaces, non-food contact surfaces: clean. Frequency; Methods. | 1 |
| 18 | Food (ice), Non-food contact surfaces: constructed, cleanable, installed, located. | 1 |
| 19 | Warewashing facilities: designed, constructed, maintained, installed, located, operated. Accurate thermometers. Chemical test papers. *chlorine* | 1 |
| 20 | Linens properly stored, dried, handled. Laundry facilities used. | 1 |
| 21 | Wiping cloths; clean, use limitation. | 1 |
| 22 | Storage, handling, drying of equipment, utensils. *wet not hung* | 1 |
| 23 | Single service articles, storage, dispensing, wrapped, Use limitations. Gloves used properly. | |

## WATER, PLUMBING, AND WASTE

| | | |
|---|---|---|
| 24* | Water; Source, Quality, Capacity, System; Approved. | 4 |
| 25* | Sewage, grease disposal: System approved; Flushed (mobile). | 4 |
| 26* | Cross connection: Back siphonage; Backflow. | 4 |
| 27* | Handwashing facilities: Toilets. Number, location. | 4 |
| 28 | Water supply. Waste disposal: Approved system (fixtures), materials, design, operation; maintenance. Other fluid wastes properly disposed. Service sink provided. | 1 |
| 29 | Handwashing facilities: Soap, towels/drying device, use restrictions. | 2 |
| 30 | Toilet rooms constructed, supplied. | 1 |
| 31 | Refuse, recyclables, and returnables. Outdoor/indoor storage area approved. Receptacles provided; covered. Approved refuse disposal method. | 1 |

## PHYSICAL FACILITIES

| | | |
|---|---|---|
| 32* | Food contamination, cleaning equipment prevented. | |
| 33* | Presence of insects, rodents, other pests. Animals prohibited. | 1 |
| 34 | Pests control methods approved, used. Pest control devices serviced, if required. | 1 |
| 35 | Premises, Free of litter, harborage. | 1 |
| 36 | Floors, walls, ceilings, attached equipment: clean. Floor openings protected. *dishwash area* Surface characteristics, indoor, outdoor: Maintained. Cleaning frequency, dustless methods. Absorbent floor materials properly used. | 5 |
| 37 | Lighting, Ventilation: adequate. Ventilation system (filters), clean, operated. Lights shielded. Dressing rooms provided. Lockers/use designated areas properly located. Living/sleeping quarters separation. | |
| 38 | | |
| 39 | Cleaning, maintenance tools properly stored. | |

## POISONOUS OR TOXIC MATERIALS

| | | |
|---|---|---|
| 40* | Toxic or poisonous items; Medicines; First aid materials identified. Labeled; Used. | 1 |
| 41 | Other personal care/first aid items; Stored; Labeled. Toxic or poisonous materials separation; Non-toxic tracking powder. | |

## OTHER

| | | |
|---|---|---|
| 42 | Permit, Report, Other properly posted. Administrative requirements, HACCP plan | 1 |

| RECEIVED BY: Name | Jimmy Rams | INSPECTED BY: Name | Cindy Goochen |
|---|---|---|---|
| | Title Steward II | | Cindy Goochen |

REMARKS: 

ADPH-FLP-103 Rev. 11-04-kw

DEFENDANT'S EXHIBIT 12

# ALABAMA DEPARTMENT OF PUBLIC HEALTH
## DETENTION FACILITY INSPECTION REPORT

Donald E. Williamson, MD
State Health Officer

**Montgomery** County

| NOTICE: | The deficiencies noted should be addressed as soon as possible. The recommendations to correct the noted deficiencies are based upon Alabama Department of Public Health "Guidelines for the Inspection of Prisons and |
|---|---|

| Facility Name: | Red Eagle Honor Farm |
|---|---|
| Director: | State Of Alabama |
| Address: | 1290 Red Eagle Road, Montgomery, AL 36110- |

| Date | Insp. Time | Design Capacity | Population | Telephone Number | Purpose |
|---|---|---|---|---|---|
| 0 4 1 0 0 6 | Out / In | 308 | 267 | 242-2510 | ☒ Regular   ☐ Other   ☐ Compliance |

| Description | Non-Compliance? (X) | Comments |
|---|---|---|
| **01 Water:** source, approved; Public (✓) Private ( ) Hot and cold water under pressure; Drinking water provided | | |
| **02 Sewage:** Sewage and waste water disposal Public ( ) Private (✓) | | |
| **03 Plumbing:** Installed, maintained; Cross connections, back siphonage, backflow | | |
| **04 Toilet, Hand Washing, Bathing Facilities:** Adequate number, convenient, designed, installed Good repair, clean; Hand cleaner, tissue, towels provided | | |
| **05 Solid Waste:** Containers, adequate number, clean covered; Outside storage area clean, properly constructed | | |
| **06 Vermin Control:** Presence of insects, rodents Outer openings protected | | |
| **07 Floors, Walls, Ceilings:** Floors, constructed, drained, clean, good repair; Walls and Ceilings good repair, clean | X | Paint peeling - A |
| **08 Lighting:** Adequate, provided as required | | |
| **09 Heating/Ventilation:** Room temperature maintained Room and equipment vented as required | | |
| **10 Laundry:** Clean, soiled clothing, linen properly stored Clean and good repair; Equipment, good repair, maintained carts | X | laundry carts |
| **11 Clothing:** Provided, regular changes, clean | | |
| **12 Bedding:** Clean linen provided Mattresses, etc., in good repair, storage pillow, mattress | X | A & B |

Areas Visited: _____

_____

_____

_____

_____

_____

_____

| Inspected By: | **Cindy Goocher** |
|---|---|
| Signature: | Cindy Goocher |
| Accompanied By | Warden Hadley |
| Signature: | |
| Received By: | Warden Hadley |
| Title: | |
| Signature: | |

DEFENDANT'S EXHIBIT 13

ADPH-FLP-1103 / 3-2004 (BS)